IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  10-cv-00261-LTB-KLM

RONALD J. REHBERG,

             Plaintiff,

v.

THE CITY OF PUEBLO,
OFFICER BRUCE CONSTUBLE, in his official and individual capacity, and
OFFICER VINCENT PETKOSEK, in his official and individual capacity,

             Defendants.

_____

MEMORANDUM OPINION AND ORDER
_____

Babcock, J.

        This matter is before on the Motion to Strike **[Doc #102]** filed by the City of Pueblo

("Pueblo"), and Officers Bruce Constuble and Vincent Petkosek (collectively, the "Defendants").

Pursuant to Fed. R. Civ. P. 37(c), their motion seeks to strike portions of an expert witness report

by Michael D. Lyman, Ph.D, who is one of Plaintiff Ronald J. Rehberg's expert witnesses. After

considering the parties' arguments, and for the reasons below, I GRANT the motion.

**I. Background**

        In this case, Plaintiff asserts three 42 U.S.C. § 1983 claims against the Defendants stemming

from an altercation with Pueblo police department officers Constuble and Petkosek (the "officers"):

excessive force, false arrest/unlawful seizure, and unlawful entry.  Plaintiff asserts that the officers

are directly liable for these claims and that, as a municipality, Pueblo is liable under *Monell v. Dep't*

*of Soc. Serv.*, 436 U.S. 658 (1978), for failing to properly hire, train, supervise, and discipline the officers.  Beyond this, only the procedural background is pertinent here.

A Scheduling Order for this case was entered on November 8, 2010.  *See* Docket #27.  It originally set May 2, 2011, as the date for disclosing affirmative experts.  Rebuttal experts were to be designated by June 2, 2011.  Per to two unopposed motions, filed on May 2, 2011, and on June 10, 2011, these deadlines were extended.  *See* Docket ## 37, 46.

The June 10 extension established July 28, 2011, as the deadline for disclosing affirmative experts, and August 19, 2011, as the deadline for designating rebuttal experts.  On July 27, 2011, Defendants filed their expert disclosures, including their expert on the officers' conduct. Plaintiff did not disclose any affirmative experts on the officers' conduct by this deadline.

Then, on August 17, 2011, after the deadline for disclosing affirmative experts, Plaintiff moved to again extend the Scheduling Order's deadline "concerning liability experts." *See* Docket #69. In his motion, Plaintiff explained that "Defendants have no objection for the extension on the deadline for a *governmental liability* expert . . . Defendants object as to all other expert deadlines being extended."   *Id.* at 2 (emphasis added). One day later, August 18, the court granted an extension for Plaintiff to disclose his governmental liability experts; it did not extend the expired deadline for disclosing experts on the officers' conduct.  *See* Docket #71.

Next, on September 15, 2011, Plaintiff again moved to modify the Scheduling Order's deadline for disclosing his governmental liability expert.  *See* Docket # 82.  The court granted the motion and extended the deadline to October 17, 2011.  *See* Docket #85.  At the court's October 6, 2011, discovery hearing, any uncertainty regarding the scope of the recent extensions was eliminated: only the deadline for Plaintiff to disclose his expert on Pueblo's *Monell* (synonymous

with governmental) liability had been extended. *See* Docket #91.  At that hearing, the court also

further extended that deadline to November 18.  *Id.*

On the deadline for disclosing an affirmative *Monell* expert, November 18, 2011, Plaintiff

once again moved to extend it.  Docket #98. For the last time, the court extended the deadline to

December 15, 2011. Docket #100.

Finally, on December 14, 2011, Plaintiff disclosed Michael Lyman, Ph.D., as his affirmative

*Monell* expert and submitted Lyman's report.  Lyman renders three opinions in his report.  His first

two pertain to the officers' conduct. To summarize, he opines that Constuble's entry into Plaintiff's

resident was "improper, unnecessary, and unreasonable under the circumstances" and that the

subsequent use of force by the officers was also "improper and unreasonable."  *See* Defs.' Mot. Ex.

A at 6, 9, 11.  His third and final opinion is that "[a]dministrators within the Pueblo Police

Department failed to conduct a proper and thorough internal affairs investigation into the incident

involving Mr. Rehberg. Had a proper investigation been conducted, [] Constuble's actions in

improperly entering Mr. Rehberg's residence would have been known and proper disciplinary

actions could have been taken against him."  *Id.* at 16.  Further, the failure to properly discipline

Constuble "ratifies his conduct and creates a venue for continued misconduct by officers within the

department."  *Id.*

Trial is set for June 4, 2012. The discovery deadline was February 27, 2012, and the

dispositive motion deadline was February 29, 2012.

## II. Law

Rule 26(a) requires a party to disclose the identity of any expert witness it may use at trial.

Fed. R. Civ. P. 26(a)(2)(A).  A party must make this disclosure "at the times and in the sequence that

the court orders." *Id.* 26(a)(2)(D). As is the case here, the court most often sets forth the time and sequence for disclosing experts in a scheduling order. *See id.* 16(a), (b). The failure to meet a scheduling order's deadline for disclosing an expert is no trifling matter. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id.* 37(c)(1); *see also Woodworker's Supply, Inc. v. Principal Mut. Life. Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). The  court may also issue additional sanctions. *See* Fed. R. Civ. P. 37(c).

### III. Discussion

Defendants' motion seeks an order striking the portions of Lyman's opinion concerning the officers' conduct–his first and second opinions–as untimely and limiting Lyman's testimony accordingly. This would leave just Lyman's third opinion discussing Pueblo's conduct. Plaintiff disclosed Lyman and his opinions in December 2011. Defendants argue that Lyman's first and second opinions concern the officers' conduct. The disclosures of affirmative and rebuttal experts on that issue were due July 28, 2011, and August 19, 2011, respectively. Hence, Defendants assert, Plaintiff's disclosure of those two opinions is untimely. Plaintiff should therefore be precluded from using them per Rules 26 and 37.

Plaintiff propounds three counterarguments. First, Plaintiff explains that to prevail against Pueblo, he must prove two things: (1) an underlying constitutional violation by Constuble or Petkosek and (2) a Pueblo custom, practice, or policy that caused his injury. *See Monell*, *supra*; *see also Bd. of Cnty. Comm'rs of Bryan Cnty. Okla. v. Brown*, 520 U.S. 397 (1997). He argues that this shows that Lyman cannot opine as to Pueblo's liability without opining as to the officers' conduct.

Second, Plaintiff asserts that Defendants have not demonstrated prejudice from the alleged untimely

disclosure. Third, he states that he complied with all of the Scheduling Order's deadlines and that

the repeated requests for extension was a product Pueblo of being consistently slow in providing him

information concerning prior constitutional violations by other members of its police department.

For the reasons herein, I grant Defendants' motion.  Importantly, nothing in this order should

be read to certify Lyman as an expert or to rule on the admissibility of his report or testimony.  Any

references to Lyman as an expert, and what he can and cannot opine on as a result, are only for

ruling on this motion.

### A. Rule 26(a)(2)(D)

To decide whether Rule 37(c) applies, I must first assess whether Plaintiff violated Rule

26(a)(2)(D) by disclosing Lyman's first and second opinions in December 2011.  *See* Fed. R. Civ.

P. 37(c).  I conclude that he did. (I note parenthetically that Defendants' position is that I should

look to Rule 16, not Rule 26.  This is incorrect.  Rule 26 is the pertinent rule.  *See* Fed. R. Civ. P.

37, 26, 16; *see also Woodworker's*, *supra*; *Orjias v. Stevenson*, 31 F.3d 995, 1005 (10th Cir. 1994);

*Smith v. Ford Motor Co.*, 626 F.2d 784 (10th Cir. 1980).  Furthermore, Plaintiff is not trying to

modify the Scheduling Order's deadline; in fact, he argues that he comported with it.)

The record shows that when Plaintiff disclosed Lyman and his report on December 14, 2011,

he did so pursuant to the Scheduling Order's deadline for disclosing experts on

*governmental* liability.  By that time, the deadline for disclosing experts on the officers' conduct had

passed.  *See, e.g.*, Docket ## 71, 82, 111, 98.  The crucial Rule 26(a)(2)(D) inquiry, then, is not one

of timing but of classification: Do Lyman's opinions concern the officers' or Pueblo's conduct?

This question proves more difficult than one might think. After reading Lyman's report,

clearly his third opinion concerns Pueblo. Hence, that opinion is timely. The first and second

opinions, however, are more problematic because they discuss only the officers' conduct. For the

reasons below, I conclude that the first two opinions concern the officers' conduct such that their

December 2011 disclosure was untimely.

To begin, Plaintiff posits that I must look at Lyman's report macroscopically, holistically,

and that I must deem it wholesale timely or untimely. Yet he offers no legal authority mandating

that approach. In this case, I find value in approaching Lyman's report more microscopically,

whereby I examine each opinion individuated from the others. This method finds support in the fact

that it is commonplace for courts to rule that an expert may opine about one facet of a case but not

another. *See, e.g.*, *U.S. v. Bedford*, 536 F.3d 1148, 1158 (10th Cir. 2008).

When I scrutinize Lyman's three opinions individually, I conclude that allowing Plaintiff to

proffer all three undercuts the foundational legal precept of substance over form. *See, e.g.*, *Chelsea*

*Family Pharmacy, PLLC, v. Medco Health Solutions*, *Inc.*, 567 F.3d 1191, 1198 (10th Cir. 2009)

(recognizing and following "substance over form" in reviewing claims in a complaint). In effect,

Plaintiff asserts that the "form" of Lyman's first two opinions and his entire report is governmental

liability, but I find that the "substance " of the first two opinions is the officers' conduct. *See* Defs.'

Mot. Ex. A. Indeed, the report's introductory text explains that Lyman was "asked to review this

matter *with regard to the actions of defendant officers* and the extent to which *their interactions* with

Mr. Rehberg were consistent with nationally recognized police practices and standards of care."

Defs.' Mot. Ex. A at 6 (emphases added).

Moreover, the first two opinions are not inextricably intertwined with the third such that they

could not be severed from it. The first two opinions stand solidly on their own and could have been

submitted as expert opinions on the officers' conduct.  To that point, I note that prior to the July 28

deadline, Plaintiff's counsel possessed all of the evidence that Lyman cites in his first two opinions.

Thus, these opinions needed to be disclosed by then.

I am well aware that to hold Pueblo liable under *Monell*, Plaintiff must prove an underlying

constitutional violation by Constuble or Petkosek.  Plaintiff uses this to argue that Lyman therefore

cannot opine as to Pueblo's liability without first opining on the officers' conduct.

Plaintiff's argument proves specious.  First, while I understand that referring to Lyman as

an "expert concerning governmental *liability*" is shorthand parlance, it is important to state that

experts cannot opine as to the ultimate issue of liability, as that is a legal conclusion.  *See, e.g.,*

*Bedford*, 536 F.3d at 1158 ("An expert may not state legal conclusions drawn by applying the law

to the facts . . . .") (internal citations and quotations omitted).  They opine as to facts.  *Id.*  This

clarification is not mere semantics; to the contrary, it has weighty implications.  For one, its

dissolves Plaintiff's argument that in order to opine as to Pueblo's liability, Lyman must opine as

to the officers' individual conduct because Lyman cannot opine as to Pueblo's liability. With respect

to Pueblo, then, Lyman could only opine as to Pueblo's conduct, which is essentially the second

element of *Monell* liability.  And Lyman need not opine as to the officers' conduct to render that

opinion.  Additionally, correctly classifying Lyman as an expert on Pueblo's conduct rather than its

liability shows that the first two opinions pertain to the officers' conduct and not to Pueblo's.

Second, Lyman certainly could have rendered the third opinion without opining as to the

individual officers' conduct; in fact he did.  To opine as to the propriety of Pueblo's conduct, all

Lyman needed was the evidence he was given.  Lyman's third opinion, like the first two, derives

from that evidence, not from the other opinions.  Nowhere in his third opinion does Lyman state that

7

it is predicated upon his first two opinions.   Rather, the opinion shows that it based upon evidence–to wit, Pueblo's police policy, certain reports, depositions, and testimony transcripts.  *See id.* at 11-16.   And Plaintiff's counsel had all of this evidence before the July 28 deadline for disclosing experts on the officers' conduct. This point may be nuanced, but is it critical here because it shows that Plaintiff's contention that Lyman unavoidably had to opine as to the officers' conduct in order to opine as to Pueblo's conduct is simply false. It also demonstrates that the opinions are severable for purposes of possibly striking portions of the report.

Accordingly, I conclude that Lyman's first and second opinions concern the officers' individual conduct such that Plaintiff should have disclosed them by the Scheduling Order's applicable deadline. As noted, this was feasible.  Because he did not, those opinions are untimely. Plaintiff therefore violated Rule 26(a)(2)(D).

### B. Rule 37(c)

Concluding that Plaintiff failed to timely disclose Lyman's first two opinions does not ineluctably lead to sanctions under Rule 37(c).   Instead, I must assess whether his failure "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Woodworker's*, 170 F.3d at 993.  This determination "is entrusted to the broad discretion of the trial court."  *Woodworker's*, 170 F.3d at 993 (quoting *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996)).  It follows that "[t]he imposition of sanctions for abuse of discovery under Fed. R. Civ. P. 37 is a matter within the discretion of the trial court."  *Orjias*, 31 F.3d at 1005.  These decisions are reviewed for an abuse of discretion. *Id.*

When rendering this determination, I "need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." *Woodworker's*,

170 F.3d at 993. Nevertheless, the following factors should guide my discretion: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.*; *Smith*, 626 F.2d at 797 (applying the factors to determine whether the district court abused its discretion in allowing testimony from a witness not listed in the pretrial order); *Summers v. Miss. Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997) (applying the factors when considering whether a district court abused its discretion in denying a plaintiff's motion to modify the scheduling order to add an expert witness).

Guided by these factors, as well as the considerations I discuss below, I conclude that Plaintiff's failure to disclose Lyman's first two opinions by the appropriate deadline was not substantially justified and is not harmless. Plaintiff does not explicitly contend that the time at which he disclosed the first two opinions is substantially justified. He makes the oblique argument that Pueblo delayed discovery by refusing to provide information regarding its police department's prior use of excessive force and constitutional violations and that, as a result, he did not have the information necessary to complete expert reports on governmental liability. The problem with this argument is patent: the expert opinions in question here do not pertain to Pueblo's conduct; they pertain to the officers' conduct. Moreover, Plaintiff's counsel possessed the evidence Lyman used to formulate his first two opinions prior to the deadline for disclosing those opinions. I therefore fail to see how Pueblo's delay in providing the evidence that Plaintiff describes explains his failure to timely file Lyman's first two opinions. As Plaintiff makes no other arguments that his untimely disclosure was substantially justified, I conclude that it was not. Hence, I look to whether the timing of the disclosure is harmless.

Defendants did not know that Plaintiff's governmental liability expert would also be opining

as the propriety of the officers' conduct.  This weighs in favor of finding harm.  *See Woodworker's*,

170 F.3d at 993 (finding that the plaintiff's failure to properly disclose its damages theory prior to

trial was harmless under Rule 37 in part because the defendant "knew the numbers on which Mr.

Wirth based his calculation; indeed, [the defendant] provided the calculation for the amount it paid

in premiums.").  It also points towards surprise and prejudice–the first guiding factor.  *See id.*

Indeed, Defendants repeatedly clarified and confirmed with both Plaintiff and the court that the

numerous extensions in late 2011 were only for Plaintiff to disclose his governmental liability

expert.  *See, e.g.*, Defs.' Reply Ex. A-2.  As one example, the parties and court had the following

exchange at an October 6, 2011, hearing:

> The Court: . . . [T]he court is going to *sua sponte* extend the deadline for the
> parties to designate affirmative experts to November 18, 2011.
>
> \*        \*        \*
>
> The Court: Anything further from the Defendant? Mr Vaughan?
>
> Mr. Vaughan: Just one thing, Your Honor, as to the expert disclosures. I
> believe that the prior extensions have been to the *Monell* experts only. This is the
> only thing that these disclosures are addressing. The parties time for disclosing
> other experts has expired.
>
> The Court: Yes, I agree, that's—that's correct, *and these extensions apply
> only to Monell* experts. Thank you. . . .

Docket # 111 at 3 (emphasis added).  The first two opinions thus surprised Defendants.

The timing of Plaintiff's disclosure also prejudiced Defendants.  Had Plaintiff disclosed

Lyman's first two opinions by the July 28 deadline, Defendants would have had until August 19 to

prepare and disclose a rebuttal expert–the same time frame Plaintiff had to disclose a rebuttal expert

to Defendants' expert on the officers' conduct.  But by waiting until December 14 to disclose all

three of Lyman's opinions, Defendants had only until January 30 to prepare and disclose rebuttal experts on both the officers' conduct and Pueblo's conduct.  Defendants will also have had less than six months before trial to prepare for Lyman.  Compare this to Plaintiff's situation: because Defendant timely disclosed its expert on the officers' conduct, Plaintiff has had since July 27, 2011, to analyze and prepare for Defendants' expert on officer conduct–over ten months before the impending June 4 trial.  The prejudice resulting from this time disparity is compounded by the fact that, as discussed, Lyman opines on the officers' conduct and Pueblo's conduct, whereas Defendants' expert opined on only the former.  Put another way, Plaintiff will have had nearly twice as long as Defendants to prepare for just half as much.

Looking at the second guiding factor, the prejudice I have described cannot be cured. Plaintiff correctly notes that Defendants were given a two-week extension to disclose their rebuttal expert, but this does not change the fact that Plaintiff had 4.5 more months to prepare for Defendants' officer conduct expert than Defendants will have had to prepare for Lyman.  The first two factors thus weigh in favor of finding that Plaintiff's failure was harmful.

Allowing Plaintiff to have Lyman testify regarding his first and second opinions would appear to minimally disrupt the trial, if at all, given that trial has not begun, nor has a final pretrial order been set.  Hence, the third factor points in favor of Plaintiff.

For the fourth factor, I consider Plaintiff's bad faith or willfulness.  Given the substantial evidence in the record showing that Plaintiff knew that the deadline for disclosing his expert on the officers' conduct had lapsed when he disclosed Lyman, I am left to infer one of two things: either Plaintiff honestly but erroneously believed that Lyman's first and second opinions pertained to Pueblo's conduct, or, instead, that he hoped to cloak those two opinions using the "governmental

liability expert" label knowing that they were untimely.   There is not enough evidence before me to conclude which one occurred here. While I have misgivings about what animated the timing of Plaintiff's disclosure, this factor favors neither party.

I turn now to the additional considerations that weighed heavily in my decision.  I am concerned about preserving the Scheduling Order's integrity.  Lyman's first two opinions concern only the officers' conduct, and he discusses their conduct extensively. Permitting Plaintiff to proffer the first two opinions via Lyman's testimony and report under the guise of establishing Pueblo's liability allows Plaintiff to circumvent the Scheduling Order's deadlines for disclosing experts on the officers' conduct.  This is so even if the timing of Plaintiff's disclosure was in good faith. Stated differently, adopting Plaintiff's position retroactively renders the Scheduling Order's deadline for disclosing experts on the officers' conduct meaningless because it allows Plaintiff to present an expert's opinion on the officers' conduct when Plaintiff did not disclose that expert by the applicable deadline.  This prospect is especially disconcerting because a scheduling order "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).

I am also concerned about abuse. Even putting aside my misgivings about the timing of Plaintiff's disclosure, I am still circumspect about permitting Plaintiff to proffer all of Lyman's opinions here because doing so lays fertile ground for abuse in future similar cases.  It invites parties to sandbag their expert disclosures in hopes of gaining an advantage in the litigation–that is, it invites parties to ignore earlier disclosure deadlines for individual conduct experts knowing they can usher expert evidence on that subject through the back door using their government liability experts who can be disclosed later, closer to trial when the opponent has less time to prepare.  Fostering these maneuvers would also impose additional stress on courts.

Plaintiff also had other options. He could have disclosed an expert on the officers' conduct by the appropriate deadline; he did not. He also could have submitted Lyman's first two opinions by their applicable deadlines and submitted the third later. Again, he did not.

Lastly, I note that the Fed. R. Civ. P. provides examples of situations in which sanctioning under Rule 37(c) would be inappropriate: "the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the requirement to make disclosure." Fed. R. Civ. P. 37 advisory committee's notes, 1993 Amendments, Subdivision (c). The situation before me is not akin to these examples.

After weighing the guiding factors and the other considerations, I find that Plaintiff's failure to disclose Lyman's first two opinions by the deadline for disclosing individual conduct experts was not substantially justified and is not harmless.

## IV. Conclusion

For the foregoing reasons, IT IS ORDERED that Defendants' Motion to Strike **[Doc #102]** is GRANTED. I therefore strike Lyman's first two opinions. Consequently, Plaintiff is precluded from using or submitting them on motion, at a hearing, or at trial. Lyman's testimony shall be so limited. To be clear, I do not strike Lyman's third opinion, as it is timely.

Date: April ___4___, 2012 in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE