IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 10-cv-00261-LTB-KLM

RONALD J. REHBERG,

        Plaintiff,

v.

THE CITY OF PUEBLO,
OFFICER BRUCE CONSTUBLE, in his official and individual capacity, and
OFFICER VINCENT PETKOSEK, in his official and individual capacity,

        Defendants.
_____

ORDER
_____

This matter is before me on the City of Pueblo's ("Pueblo") Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment **[Doc #113]**. After considering the parties' arguments, and for the reasons herein, I GRANT Pueblo's motion insofar as it seeks dismissal and DENY it as moot insofar as it seeks summary judgment.

**I. Background**

Only a summary of the facts is necessary. This case flows from a February 10, 2008, altercation at Plaintiff Ronald J. Rehberg's home between Rehberg and defendants Bruce Constuble and Vincent Petkosek, two Pueblo police officers. The altercation led to Constuble and Petkosek entering Rehberg's home and to Rehberg being injured and arrested. Feeling aggrieved, on February 8, 2010, Rehberg filed his original complaint, initiating this lawsuit. He filed an amended complaint on April 5, 2010. On September 14, 2011, he filed his second amended complaint, which is the basis for this action and the focus of the motion.

Rehberg's second amended complaint asserts three claims pursuant to 42 U.S.C. § 1983: (1) excessive force; (2) false arrest/unlawful seizure; and (3) unlawful entry. Plaintiff asserts that Constuble and Petkosek are directly liable for these claims and that Pueblo is liable under *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978), for failing to properly hire, train, supervise, and discipline its police officers. Pueblo's motion seeks to dismiss the second amended complaint pursuant to Fed. R. Civ. P. 12(c) or, if I deny that, for summary judgment under Rule 56.

## II. Standards of Review

"A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000); *accord Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223-24 (10th Cir. 2009). To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *accord Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). When deciding a motion to dismiss, the court must assume the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the light most favorable to the plaintiff. *Teigen*, 511 F.3d at 1078. Legal conclusions do not receive this treatment. *Iqbal*, 556 U.S. at 678.

By contrast, summary judgement per Rule 56 "is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Klen v. City of Loveland, Co.*, 661 F.3d 498, 508 (10th Cir. 2011) (quoting Fed. R. Civ. P.

56(a)).  Under this standard, the court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005).

### III. Discussion

Pueblo's leading contention is that the second amended complaint fails to state a plausible § 1983 claim against it.  For the reasons below, I agree.  As a corollary, I need not and do not address Pueblo's alternative argument for summary judgment.

### A.

In relevant part, § 1983 provides the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Local governments can be liable under § 1983, *Monell, supra*, but "only for their *own* illegal acts." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) (internal quotation omitted). Hence, "[a] municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) (citing *Monell*, *supra*).  Rather, to state a § 1983 claim against Pueblo, Rehberg must sufficiently allege (1) the existence of a municipal policy or custom, which (2) directly caused the injury alleged.  *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)).  With regards to establishing the first requirement, a municipal policy or custom may take the form of any of the following:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a wide widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage

>with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions-and the basis for them-of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoetler v. Twin Peaks Charter Acad.,* 602 F.3d 1175, 1189-90 (10th Cir. 2010)) (internal quotations omitted).

In support of its motion, Pueblo explains that Rehberg does not assert a separate claim against it. Instead, in each of his three claims in the second amended complaint, he alleges essentially the same three paragraphs:

>The City of Pueblo failed to properly hire, train, supervise and/or discipline members of its law enforcement regarding [the proper use of physical force during arrest/issues of probable cause during arrest/issues of constitutionally permissible entry into a residence].

>This inadequate hiring, training and/or supervision results from a conscious or deliberate choice to follow a course of action from among various alternatives available to the City of Pueblo.

>Such failure to properly hire, train and supervise was the moving force behind and proximate cause of [the officers' use of excessive force against Plaintiff/false arrest without probable cause/unlawful entry into Plaintiff's residence] and constitutes an unconstitutional policy, procedure, custom and/or practice.

*See* Pl.'s Second Am. Compl. ¶¶ 70-72, 80-82, 91-93. Relying on four cases from this Court in support, Pueblo contends that these three paragraphs are conclusory and lack factual enhancement. *See Myers v. Koopman*, 2010 WL 3843300 (D. Colo. Sept. 27, 2010); *Twitchell v. Hutton*, 2011 WL 318827 (D. Colo. Jan. 28, 2011); *Bark v. Chacon*, 2011 WL 1884691 (D. Colo. May 18, 2011); *Whiteman v. El Paso Criminal Justice Center*, 2011 WL 2610202 (D. Colo. July 1, 2011). Therefore, Pueblo urges, Rehberg fails to state a plausible § 1983 claim against it.

Rehberg rejoins that he has fortified his § 1983 claims against Pueblo with sufficient allegations. He points out that, contrary to Pueblo's motion, his allegations concerning Pueblo do not consist of only those three paragraphs recited above. Rehberg proffers 26 additional paragraphs of allegations pertaining specifically to Pueblo's liability. *See* Pl.'s Second Am. Compl. ¶¶ 34-60. Those paragraphs allege the following:

Pueblo and its supervisory law enforcement officers failed to properly conduct an internal affairs investigation into or supervisory review of the incident involving Rehberg, despite Rehberg complaining to supervisory officers at the Pueblo police department. *Id.* ¶ 34, 35, 36, 48-51. Pueblo has a practice of investigative shortcomings related to its police officers' possible unconstitutional conduct. *Id.* ¶ 37. It exhibits willful and deliberate indifference to its officers' unconstitutional conduct by failing to investigate allegations of unconstitutional conduct and by failing to require prepared statements from those officers involved in use of force incidents and warrantless entries and arrests. *Id.* ¶ 40-41. Pueblo also fails to adequately interview officers alleged to have committed constitutional violations and to adequately document its law enforcement officers' unconstitutional conduct. *Id.* ¶ 38, 39. Nor does it require its officers to prepare written reports when, due to an officer's action, a citizen is required to receive medical attention. *Id.* ¶ 42. And it fails to discipline officers who do not properly report and investigate complaints of unconstitutional conduct. *Id.* ¶ 47. Constuble's training on welfare checks was also grossly inadequate. *Id.* ¶ 55.

Pueblo's actual practices also violate its written policies concerning the prohibition of excessive force during an arrest, its requirement to impartially and intensively investigate allegations of excessive force, and supervisory officers' duties regarding accepting and handling complaints

5

of constitutional misconduct. *Id.* ¶ 43, 44, 53, 52. Furthermore, Pueblo's supervisory law enforcement practice a code of "blue silence," whereby they fail to report and investigate allegations of unconstitutional conduct by police officers, even when they have received complaints. *Id.* ¶ 45, 46.

Over the past 5.5 years, Pueblo's police department has internally investigated 70 formal complaints of excessive force, false arrest, and unlawful entry. *Id.* ¶ 56. Since 2006, none of these complaints has been sustained. *Id.* This is statistically improbable. *Id* ¶ 59. Pueblo's failure to discipline or safeguard against this known danger establishes a written policy or custom of tolerating excessive force, which approves and encourages unconstitutional conduct by its officers. *Id.* ¶ 57, 58, 60. Finally, Constuble and Petkosek acted pursuant to these practices and policies. *Id.* ¶ 54.

Rehberg's argument opposing dismissal simply recapitulates those 26 paragraphs and concludes that they buoy his claims against Pueblo to plausible. He fails to cite any law demonstrating that these allegations are of the ilk to state a § 1983 claim against Pueblo.

**B.**

Although it is unclear from the second amended complaint, Rehberg's response elucidates that he asserts that Pueblo is liable for his § 1983 claims on the basis of three independent "municipal policies or customs." *See* Pl.'s Resp. at 15. First, Pueblo failed to adequately train and supervise its police officers. Second, Pueblo ratified Constuble's and Petkosek's conduct. Third, Pueblo has a custom of systematically ignoring, tolerating, and hiding possible unconstitutional conduct by police officers. In turn, I examine whether Rehberg's second amended complaint plausibly alleges any of these three bases for municipal liability.

### 1. Failure to Train or Supervise

A municipality may be liable for failing to train or supervise its employees in "limited circumstances." *City of Canton,* 489 U.S. at 387. (The failures to "train" or "supervise" are so similar that they are discussed together and require the same elements. *See, e.g.*, *Bryson*, 627 F.3d at 788; *Brammer-Hoelter*, 602 F.3d at 1189-90. Thus, I discuss Rehberg's training claim together with his supervision claim, and the legal principles below apply equally to both.) In fact, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 131 S.Ct. at 1359; *see also Okla. City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) (a "policy" of "inadequate training" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*").

To state a § 1983 claim based on the failure to train or supervise, a plaintiff must sufficiently allege that the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton,* 489 U.S. at 388. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389. "Deliberate indifference" is an exacting standard of fault. *See Bryan Cnty. Bd. of Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). It requires showing that a municipal actor disregarded a known or obvious consequence of his action. *Id.* "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 131 S.Ct. at 1360. "Deliberate indifference" for purposes of failure to train or supervise ordinarily necessitates showing a pattern of similar constitutional violations by untrained employees. *See Bryan Cnty.*, 520 U.S. at 409.

I conclude that Rehberg fails to state a plausible claim for the failure to train or supervise. To begin, he seeks to impose municipal liability under § 1983 on the basis of a single incident. "[W]here a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-85 (1986)); *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under [*Monell*] unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.")). Rehberg fails to state such an allegation; he identifies neither a decision nor a municipal policymaker to whom this alleged failure to train or supervise can be attributed. *See Hutton, supra*; *see also Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009) (in case where plaintiffs sought to hold a city liable under § 1983 based on a single incident, court held that plaintiffs did not state a claim in part because they did not allege that the incident in question occurred pursuant to a decision by a city policymaker).

The second amended complaint is also deficient because Rehberg "do[es] not allege specific facts about who, what, where, and when that establish a plausible claim" that Pueblo failed to train or supervise its officers. *See Myers*, 2010 WL 3843300, at *5. Rehberg does not proffer any facts regarding the officers' training or supervision–when it occurred, who conducted it, or how it was deficient. *See, e.g.*, *Bark,* 2011 WL 1884691, at *3 (dismissing a plaintiff's § 1983, failure to train case against a municipality in part because the plaintiff failed to allege specific deficiencies in training and supervision). He simply asserts that Constuble's excessive force training was grossly

8

inadequate–nothing more. Nor does he explain how the incident described in the second amended complaint could have been avoided with different or better training and supervision. *See, e.g.*, *id.* This is in part because those allegations concerning supervision of Constuble and Petkosek by unnamed supervisors describes conduct occurring *after* the altercation at issue. Rehberg also does not identify the individuals he claims inadequately supervised Constuble and Petkosek, nor does he allege that these "supervisory officers" were policymakers. *See, e.g.*, *Christensen v. Park City Mun. Cop.*, 554 F.3d 1271, 1279 (10th Cir. 2009) (a municipality may not be liable under § 1983 for the acts of its employees unless they are policymakers or unless the municipality itself has adopted an unconstitutional law, custom, or policy). Mere conclusory allegations that an officer or group of officers are inadequately trained are not enough to plausibly state a failure to train or supervise claim. *City of Canton*, 489 U.S. at 390-91.

Furthermore, Rehberg fails to establish that Pueblo's failure to train went beyond just Constuble even though "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 131 S.Ct. at 1360 (internal quotation omitted). He alleges only that "Officer Constuble's training on welfare checks was grossly inadequate," providing no factual enhancement that Pueblo failed to train other members of its police force. This is not enough to state a claim because the fact "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 391. To the extent that some of the allegations posit constitutional violations by other officers, Rehberg does not allege that those violations were a result of inadequate training, nor does he support them with facts. *See, e.g.*, ¶ 46 ("[] Pueblo's supervisory

9

law enforcement practice a culture of the 'blue code of silence,' which results in the failure to report and investigate other Pueblo law enforcement's unconstitutional conduct.").

Accordingly, I find that this basis for holding Pueblo liable under § 1983 is supported by mere labels and conclusions. Rehberg therefore fails to state the claim. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'label and conclusions' . . . will not do.").

### 2. Ratification

A municipality may also be liable under § 1983 if it ratifies an employee's unconstitutional conduct. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127; *Moss*, 559 F.3d at 1169. For that claim to withstand dismissal, a plaintiff must sufficiently allege that the "subordinate's position is subject to review by the municipality's authorized policymakers, . . . [and that] the authorized policymakers approve[d] a subordinate's decision and the basis for it." *Melton v. City of Okla. City*, 879 F.2d 706, 724 (10th Cir. 1989) (quoting *Praprotnik*, 485 U.S. at 127), *modified on other grounds*, 928 F.2d 920, 922 (10th Cir. 1991) (en banc) (explicitly leaving panel's judgment on § 1983 liability intact).

I conclude that Rehberg fails to plausibly allege that Pueblo ratified Constuble's and Petkosek's conduct. First, Rehberg never alleges that anyone affirmatively approved of their conduct. This is problematic. *See, e.g., Twitchell*, 2011 WL 318827 at *5 ("I find that Plaintiff's Complaint fails to allege any facts regarding an affirmative approval of Hutton's actions, which is required in order to establish municipal liability under § 1983 under a ratification theory".) (citing *Brammer-Hoelter*, 602 F.3d at 1189); *see also Moss*, 559 F.3d at 1169 (finding that plaintiffs did not state a claim against a city in part because it did not allege that city's policymaker approved the alleged unconstitutional conduct); *Bryson*, 627 F.3d at 790 ("[A] municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's specific

unconstitutional actions, as well as the basis for these actions."). This allegation is noticeably absent even from those three paragraphs that Rehberg recites in each of his claims for relief. *See* Pl.'s Second Am. Compl. ¶¶ 70-72, 80-83, 91-93. His closest approximations are that Pueblo's failure to adequately document its law enforcement officers' unconstitutional conduct "demonstrate[s] a policy of ratification of unconstitutional behavior" and that its failure to sustain a complaint of excessive force, false, arrest, or unlawful entry in the past 5.5 years is tantamount to tacit approval. Pl.'s Second Am. Compl. ¶¶ 38, 60. Assuming that these constitute the "acceptance" that *Praprotnik* contemplates, they are still wanting because Rehberg does not allege that the *basis* for Constuble's and Petkosek's conduct was also approved.

Second, to hold Pueblo liable under this theory, Rehberg must sufficiently allege that Pueblo's *authorized policymaker* approved of the alleged unconstitutional conduct and the basis for it. He does not, referring instead to "Pueblo" and its "supervisory officers." But Pueblo can only be liable under this theory if its authorized policymakers approved the conduct at issue. *See, e.g.*, *Moss*, 559 F.3d at 1169. Thus, referring to "Pueblo" is inadequate. Turning to the "supervisory officers," then, Rehberg does not allege that they were Pueblo's authorized policymakers. And even if I were to infer that they were, the assertions lack needed factual enhancement, such as the supervisors' identities and when they rendered approval.

For these reasons, the allegations that Rehberg proffers in support of ratification fail to "nudge[]" the claim "across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). He therefore fails to state a claim.

### 3. Custom

"[T]he Court has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.' " *Praprotnik*, 485 U.S. at 127 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)); *accord Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 736 (1989) (governmental entities may be liable for a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity"). For a § 1983 claim based on custom to withstand Rule 12(b)(6) dismissal, the plaintiff must sufficiently allege the following:

> (1) The existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the [municipality's] employees;
>
> (2) Deliberate indifference to or tacit approval of such misconduct by the [municipality's] policymaking officials [] after notice to the officials of that particular misconduct; and
>
> (3) That the plaintiff was injured by virtue of the unconstitutional acts pursuant to the [] custom and that the custom was the moving force behind the unconstitutional acts.

*Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993).

I conclude that Rehberg fails to plead a plausible custom claim. To prove a "continuing, persistent and widespread" practice, plaintiffs usually offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way. *Carney v. City and Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008). Rehberg does not: he never alleges an instance where Constuble, Petkosek, or another Pueblo police officer unlawfully arrested, used excessive force upon, or unlawfully entered the home of someone similarly situated as a result of the purported custom. Rather, he makes broad, general statements that fall below even other forms of vague

assertions that the Tenth Circuit has found unsatisfactory. *See, e.g.*, *Lewis v. McKinley Cnty. Bd. of Cnty. Comm'rs*, 425 Fed. App'x 723, 726 (10th Cir. 2011) (holding that plaintiff's statement in her complaint that she was "aware of two other recent cases ... of illegal incarceration of women" at the jail for longer than 30 days was insufficient to state a claim that McKinley County had actual or constructive notice that its failure to act was substantially certain to result in a constitutional violation). This not trifling. "Indeed, a plaintiff's 'failure to allege the existence of similar discrimination as to others seriously undermines [his] claim that the [municipality] maintained a custom . . . .' " *Carney*, 534 F.3d at 1274 (quoting *Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995)); *see also Praprotnik*, 485 U.S. at 127 (custom requires that the illegal practice be "widespread"–that is, involving a "series of decisions"); *Melton*, 879 F.2d 725 n.6 (distinguishing case from *Praprotnik* because plaintiff offered evidence that city acted similarly against another person and was thus potentially able to demonstrate the existence of a custom).

Rehberg tenders numerous assertions in an attempt to demonstrate a Pueblo custom of ignoring and tolerating police officers' possible unconstitutional conduct, but they provide no more than a "sheer possibility" that such a custom exists. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). First, the second amended complaint is bereft of facts in support of thereof. Second, these assertions encompass "wide swath[s] of conduct." *Robbins*, 519 F.3d at 1247. With respect to the handling of his complaint, for example, he never names a supervisory officer, cites the dates he complained, nor summarizes the responses he received. His allegations concerning Pueblo's and its police department's general practices are equally hollow. For example, Rehberg asserts that Pueblo fails to investigate allegations of unconstitutional conduct by its police officers, *see* Pl.'s Second Am. Compl. ¶ 40, yet he proffers no supporting facts that allow me "to infer more

than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. The assertion just stands naked. This deficiency is endemic: despite all the assertions pertaining to a custom–indeed, to Pueblo's alleged municipality liability–Rehberg avers not one date, place, name, or other similar supporting fact that would raise the claim above the speculative level (beyond, of course, those related specifically to the February 10, 2008, altercation at issue). So while Rehberg tenders a cornucopia of assertions concerning a persistent and widespread practice, they are conclusions devoid of further factual support. This does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Additionally, as was the case with his other two bases for municipal libaility, Rehberg fails to sufficiently identify a "policymaking official." *See* Parts III.B.1, 2, *supra.* Instead he just refers to "Pueblo" and unnamed "supervisory officers." As explained, this is not enough. *See* Parts III.B.1, 2, *supra.* Rehberg thus fails to satisfactorily allege the second element of a custom claim.

For the foregoing reasons, I find that Rehberg pleads only "[t]hreadbare recitals of the elements of" a § 1983 action based on custom "supported by mere conclusory statements." *Iqbal*, 129 S.Ct. at 1949. His § 1983 claim against Pueblo on that basis thus cannot withstand dismissal. *Id.* Consequently, combined with Parts III.B.1 and 2, I conclude that Rehberg fails to sufficiently plead a municipal policy or custom required to state a § 1983 claim against Pueblo. *See Hinton*, 997 F.2d at 782. I therefore need not and do not assess whether summary judgment is appropriate.

## IV. Conclusion

For the foregoing reasons, it is ordered that Pueblo's Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment **[Doc #113]** is GRANTED insofar as it seeks dismissal per Rule 12(c), with costs to be awarded to Defendant, Pueblo; the rest of the motion is DENIED as moot. As a result, Pueblo is dismissed, leaving just Constuble and Petkosek as defendants.

Date: April   17  , 2012 in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE